UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES N. YANT,

               Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

               Defendants.
_____/

Case No. 1:24-cv-702

Honorable Sally J. Berens

**OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the amended complaint.[1] *See In re Prison Litig. Reform Act*, 105 F.3d

---

[1] Plaintiff has filed a motion for leave to file an amended complaint (ECF No. 6), to which he has attached his proposed amended complaint (ECF No. 6-1). The Federal Rules of Civil Procedure permit a party to amend a pleading "once as a matter of course" no later than 21 days after service or 21 days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). *See* Fed. R. Civ. P. 15(a)(1). Because the Court has not yet directed service of the complaint, Plaintiff need not have sought leave to file his amended complaint. In any event, the Court will grant Plaintiff's motion (ECF No. 6) and will deem his amended complaint (ECF No. 6-1) to be the operative pleading in this matter. The Court will direct the Clerk to file the amended complaint as a separate docket entry in this matter.

1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the

named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Washington, Russell, Morrison, Chrisman, Rohrig, Mikel, Schultz, Villasan, Travis, Macauley, and West. The Court will also dismiss Plaintiff's official capacity claims for damages against remaining Defendants Oullette, Simon, Coleman, and Bomber. Plaintiff's Eighth Amendment personal capacity claims, as well as his official capacity claims for injunctive relief, against Defendants Oullette, Simon, Coleman and Bomber, remain in

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

the case. Moreover, Plaintiff's motion for a preliminary injunction (ECF No. 3) will be denied without prejudice.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility as well as the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington and MDOC Grievance Manager Richard D. Russell. Plaintiff also sues the following LCF personnel: Warden Bryan Morrison, Deputy Warden Troy Chrisman, Grievance Coordinator J. Rohrig, Health Unit Manager Nathan Mikel, medical provider Margaret Oullette, and nurses Mary Schultz, Rosemary Villasan, and Michael Travis. Additionally, Plaintiff sues the following IBC personnel: Warden Matt Macauley, medical provider Brent J. Simon, and nurse Katherine West. Plaintiff also sues Doctors R. Coleman and Jeffrey Bomber, whom he refers to as employees of the MDOC. Plaintiff sues all Defendants in their official and personal capacities. (Am. Compl., ECF No. 6-1, PageID.127.)

In his amended complaint, Plaintiff alleges that he originally injured his neck in 1999 while weightlifting at a correctional facility in Detroit. (*Id.*, PageID.127.) Over the last decades, Plaintiff "has complained of re-aggravating the injury to his neck at various prisons." (*Id.*) For example, while housed at the Chippewa Correctional Facility (URF) from November 2015 until March 2019, medical provider Brenda Buchanon provided Plaintiff with Tylenol and a second pillow. (*Id.*) She also ordered an X-ray, which "revealed arthritis in the neck's cervical area." (*Id.*, PageID.128.)

4

Plaintiff was transferred to LCF on March 19, 2019, and Defendant Oullette was assigned as his medical provider. (*Id.*) Plaintiff claims that during a consultation, Defendant Oullette fell asleep at her desk "prior to her physical examination of Plaintiff." (*Id.*) Plaintiff submitted a grievance to Defendant Mikel, and he was assigned to a different medical provider, non-party E'coe Hill. (*Id.*) Plaintiff alleges that over the next two years, Hill prescribed multiple medications "in an attempt to alleviate some of Plaintiff's severe headaches and neck pain. She also renewed the order for Plaintiff to have a second pillow for neck support." (*Id.*) After Plaintiff's symptoms became worse, Hill and Plaintiff "discussed the probability for the need for a neurosurgeon to perform corrective surgery and moved forward with testing to determine to what extent the damage was to Plaintiff's spine." (*Id.*)

On August 16, 2021, Plaintiff was taken to see Dr. Dennis Dafnis for an EMG. (*Id.*) The EMG revealed "an abnormal study with acute C5-C6, C6-C7 radiculopathy bilaterally, along with carpal tunnel syndrome bilaterally." (*Id.*) On August 20, 2021, non-party Heather Doolittle requested that Plaintiff receive a consultation with a neurosurgeon, continued Plaintiff's Naproxen prescription, and "continued the second pillow authorization." (*Id.*)

Plaintiff alleges that, in lieu of a consultation, he underwent an MRI at the Henry Ford Allegiance Hospital on November 9, 2021. (*Id.*) The MRI revealed disc space narrowing with spurring. (*Id.*) Dr. Mohammad Asad's impression was as follows: "1. Mild to moderate canal stenosis and foraminal encroachment at C5-6. 2. Left lateral recess narrowing and mild left foraminal encroachment, C3-4, mild bilateral foraminal encroachment at C6-7." (*Id.*)

Five months later, on April 21, 2022, Plaintiff was taken to see specialist Daniel Baxter at the Hillsdale Hospital. (*Id.*) Dr. Baxter scheduled Plaintiff for pain injections. (*Id.*) Dr. Baxter also forwarded a treatment plan to LCF. (*Id.*) That plan noted "pain management, home exercises (as

able), ice therapy[,] and anti-inflammatory medications." (*Id.*, PageID.129.) Plaintiff contends that LCF medical staff "ignored all these recommendations" for eight days. (*Id.*)

On April 29, 2022, Plaintiff and numerous other prisoners were transferred to URF while LCF completed repairs to prisoner housing units. (*Id.*) On May 18, 2022, while at URF, non-party medical provider Danya Russo reviewed Dr. Dafnis's findings and the MRI report and had Plaintiff taken to the Chippewa County War Memorial Hospital for pain relief. (*Id.*) Dr. Alshab reviewed the MRI report and discussed "the risks/benefits of an epidural steroid injection to assist with pain as an alternative to surgery." (*Id.*) Dr. Alshab told Plaintiff:

> If you were my brother, I'd tell you to put off surgery as long as you are physically able. Because your injury is so bad you are most likely to require a disc infusion, which should alleviate most of your pain and stop the nerve damage from growing worse. However, you may suffer from being more debilitated with less range of motion.

(*Id.*)

Plaintiff was transferred back to LCF on July 11, 2022, and he was reassigned to Defendant Oullette for medical care. (*Id.*) Plaintiff alleges that from September 15, 2022, to July 19, 2023, he submitted numerous requests to healthcare staff asking that they follow Dr. Alshab's recommended treatment plan, which included: "(1) provide patient with 'non-opioid therapies'; (2) 'lifestyle modifications'; (3) 'physical therapy'; and (4) 'interventional procedures.'" (*Id.*) Plaintiff contends that, after he submitted a request for treatment on October 31, 2022, and received a reply on November 1, 2022, he "began the grievance process," hoping that Defendants Mikel, Rohrig, Chrisman, and Morrison "would investigate and intervene on behalf of Plaintiff's right to be treated for his serious medical condition." (*Id.*) Plaintiff claims that his grievance was rejected at Step I, and that this rejection was approved by Defendants Rohrig and Chrisman. (*Id.*)

Plaintiff was transferred to IBC on November 17, 2022. (*Id.*) On November 29, 2022, Plaintiff was evaluated by Defendant Simon. (*Id.*, PageID.129–130.) Plaintiff alleges that

Defendant Simon reviewed his medical records and the various treatment plans but refused to follow Dr. Alshab's recommendations. (*Id.*, PageID.130.) Plaintiff contends that Defendant Simon did not order any effective non-opioid pain medications, discontinued the use of a second pillow, and failed to provide any other therapies or procedures. (*Id.*) Defendant Simon told Plaintiff that he would receive "some sort of pain management." (*Id.*) However, as of January 9, 2023, Plaintiff had not received any. (*Id.*) Defendant West told him that the treatment was "pending scheduling." (*Id.*)

Plaintiff contends that on December 20, 2022, Defendant Russell responded to a Step III grievance, noting that the rejection of Plaintiff's prior grievance was upheld. (*Id.*)

Plaintiff saw Defendant Simon again on February 6, 2023. (*Id.*) Plaintiff "reiterated the level of pain and discomfort he is living with and inquired as to when, if ever, he'd be given treatment as directed by the two Specialists' recommendations." (*Id.*) Plaintiff alleges that Defendant Simon refused to provide pain medication or follow any of the treatment plans, instead noting, "You are approved for treatment, but IBC and the MDOC is experiencing staff shortages." (*Id.*)

On June 9, 2023, Plaintiff was taken to the Sheridan Community Hospital for a consultation with Dr. Mark Clark. (*Id.*) Dr. Clark opined that "due to the lapse in time, Plaintiff's condition had worsened and he was concerned about administering a 'risky epidural' without an updated EMG and MRI." (*Id.*) Dr. Clark recommended that Plaintiff restart Naproxen as long as there were no liver contraindications. (*Id.*) Dr. Clark noted that "he'd administer 'cervical facet joint injections in the upper cervical spine' to help." (*Id.*) According to Plaintiff, that treatment plan was rejected by Defendants Coleman and Bomber, and Defendant Simon agreed with the rejection. (*Id.*)

Plaintiff saw Defendant Simon again on July 19, 2023. (*Id.*) Defendant Simon told Plaintiff that Defendant Coleman had rejected Dr. Clark's recommendations and that he, along with Defendant Bomber, agreed with that refusal. (*Id.*, PageID.131.) Defendant Simon noted concerns about stomach bleeding, but Plaintiff contends that he has never experienced such symptoms. (*Id.*) Plaintiff avers that prior occult test cards twice showed that no blood existed in his stool. (*Id.*)

Plaintiff alleges that as of July 8, 2024, he had still not received "any effective medications beyond ineffective doses of Gabapentin for the cervical spine injuries." (*Id.*) Plaintiff avers that he had still not received physical therapy or any lifestyle modifications. (*Id.*) Plaintiff believes that Defendants Mikel, Rohrig, Chrisman, Morrison, Washington, and Russell rejected his grievances and "deliberately denied medical treatment" to retaliate against Plaintiff for filing a grievance against Defendant Oullette in 2019. (*Id.*)

Plaintiff underwent an MRI at Sparrow Hospital in February of 2024. (*Id.*) Dr. Steven Clerc noted that Plaintiff now has a herniated vertebra, as well as two vertebrae abutting the spinal cord. (*Id.*) Dr. Clerc also noted "[f]acet arthropathy and uncovertebral joint hypertrophy results in severe left and moderate to severe right-sided neural foraminal narrowing." (*Id.*, PageID.132.)

On August 15, 2024, Plaintiff met with Dr. Kim Williams, a neurosurgeon consultant. (*Id.*) Dr. Williams "immediately recognized severe nerve damage in the right hand." (*Id.*) Dr. Williams said, "I bet you probably have problems holding onto things? And you are most likely experiencing chest pain from the damaged C-6?" (*Id.*) Plaintiff indicates that he had filed "multiple medical complaints" regarding these issues. (*Id.*) Dr. Williams also noted that walking had become an issue for Plaintiff. (*Id.*) Dr. Williams acknowledged that Tylenol and Gabapentin "would not do much to help these types of injuries" and recommended that Plaintiff receive surgery. (*Id.*) Plaintiff asked "if surgery could be put off for 3–6 months to try and follow the previously recommended plan(s)

for treatment." (*Id.*) Dr. Williams was reluctant, but agreed to "recommend facet joint injections, physical therapy, and lifestyle modifications." (*Id.*) Dr. Williams cautioned that waiting 3–6 months could result in Plaintiff needing a walker or wheelchair. (*Id.*) "His recommendation was that he wanted corrective surgery to be performed within 6-8 weeks" if approved "by those responsible for Plaintiff's care." (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment claims against all Defendants premised upon deliberate indifference to his medical needs. (*Id.*, PageID.133.) Moreover, as noted above, Plaintiff references retaliation. Accordingly, the Court will construe his amended complaint to assert First Amendment retaliation claims against Defendants Mikel, Rohrig, Chrisman, Morrison, Washington, and Russell. The Court also construes the amended complaint to assert claims regarding the handling of Plaintiff's grievances against those individuals. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.136–138.)

## II.    Motion for a Preliminary Injunction

Plaintiff has filed a motion for a preliminary injunction. (ECF No. 3.) Specifically, Plaintiff seeks preliminary injunctive relief in the form of an order directing Defendants to stop the "Eighth Amendment violations leveled at Plaintiff and provide the health care that has been diagnosed as mandating treatment." (*Id.*, PageID.115.) Plaintiff also seeks an order directing Defendants "to refrain from any further acts of retaliation." (*Id.*)

Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Northeast Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must

consider whether the plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met.").

Here, as to the first factor, although the Court makes no final determination on this issue, it is not at all clear from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his claims. Second, again, although the Court makes no final determination and does not minimize Plaintiff's experience, for the purposes of Plaintiff's motion, it is not clear that Plaintiff will suffer irreparable harm without the issuance of a preliminary injunction. Finally, as to the third and fourth factors, these factors weigh against the issuance of a preliminary injunction at this time. Accordingly, Plaintiff's motion for a preliminary injunction (ECF No. 3) will be denied without prejudice.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

10

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Schultz, Villasan, and Travis

Plaintiff has named nurses Mary Schultz, Rosemary Villasan, and Michael Travis as Defendants in this matter, but he fails to name these individuals anywhere in the body of his amended complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has

11

consistently held that damage claims against government officials [or entities] arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person or entity is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails even to mention, much less attribute any misconduct to, Defendants Schultz, Villasan, and Travis. Because his allegations against them fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Plaintiff's claims against Defendants Schultz, Villasan, and Travis will be dismissed.[3]

---

[3] The various exhibits that Plaintiff submitted with his initial complaint indicate that Defendants Schultz, Villasan, and Travis responded to some of Plaintiff's healthcare requests. However, it is not the Court's responsibility to manufacture factual allegations against these individuals from these exhibits. Plaintiff's failure to mention Defendants Schultz, Villasan, and Travis anywhere in the body of his amended complaint mandates the dismissal of these individuals.

### B.        First Amendment Retaliation Claims

Plaintiff alleges that Defendants Mikel, Rohrig, Chrisman, Morrison, Washington, and Russell rejected a grievance he filed in 2022 regarding his medical treatment, and denied medical treatment, to retaliate against Plaintiff for filing a grievance against Defendant Oullette in 2019. (Am. Compl., ECF No. 6-1, PageID.131.) The Court, therefore, has construed Plaintiff's amended complaint to assert First Amendment claims against these individuals.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations

omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive Section 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, while Plaintiff engaged in protected conduct by filing his 2019 grievance against Defendant Oullette, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), Plaintiff merely alleges the ultimate fact of retaliation in this action. Notably, Plaintiff alleges no facts suggesting that any of these individuals, other than Defendant Mikel, were even aware of the grievance Plaintiff had filed in 2019. Furthermore, Plaintiff's complaint is devoid of *facts* suggesting that these Defendants rejected his grievances ***because*** of that prior grievance, and nowhere in the complaint does Plaintiff suggest that these Defendants, who are all administrative figures, had any authority to directly provide healthcare to him. Additionally, the 2022 grievance, which was rejected at all levels by Defendants Mikel, Rohrig, Chrisman, and Russell (on Washington's behalf), was filed three years after Plaintiff filed his 2019 grievance against Defendant Oullette.

Accordingly, any intended First Amendment retaliation claims against Defendants Mikel, Rohrig, Chrisman, Morrison, Washington, and Russell will be dismissed.

### C.    Claims Regarding Handling of Grievances

The Court has also construed Plaintiff's complaint to assert constitutional claims against Defendants Mikel, Rohrig, Chrisman, Morrison, Washington, and Russell premised upon their handling of Plaintiff's grievances.

As an initial matter, courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v.*

14

*Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, any intended procedural due process claim regarding Plaintiff's use of the grievance procedure and Defendants' responses to his grievances or kites will be dismissed.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances or their failure to respond to Plaintiff's complaints. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to

the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for the foregoing reasons, any intended constitutional claims against Defendants Mikel, Rohrig, Chrisman, Morrison, Washington, and Russell premised upon their handling of Plaintiff's grievances will be dismissed.

### D.    Eighth Amendment Claims

Plaintiff alleges that all Defendants have violated his Eighth Amendment rights by failing to provide adequate care for Plaintiff's serious medical needs, i.e., the injuries to his neck and cervical spine. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical

16

attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, Plaintiff has sufficiently set forth facts alleging that he suffers from a serious medical condition, thereby meeting the objective prong of the two-part test. The Court, therefore, will consider whether Plaintiff has sufficiently alleged facts with respect to the subjective component for each remaining Defendant.

### 1. Defendants Washington, Russell, Morrison, Chrisman, Rohrig, and Macauley

Plaintiff suggests that Defendants Washington, Russell, Morrison, Chrisman, Rohrig, and Macauley violated his Eighth Amendment rights by failing to ensure that Plaintiff received adequate healthcare in response to his grievances.

Plaintiff, however, fails to allege any facts suggesting that these individuals took any action against him other than to respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.

*Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Washington, Russell, Morrison, Chrisman, Rohrig, and Macauley encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct other than to allege that they rejected his grievances. In any event, non-medical personnel, such as these individuals, who have no training or authority to supervise healthcare officials, are entitled to rely on a medical provider's judgment and cannot be held liable for healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th

Cir. 2018); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . .  a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

Plaintiff's vague and conclusory allegations are insufficient to show that Defendants Washington, Russell, Morrison, Chrisman, Rohrig, and Macauley were personally involved in the decisions regarding Plaintiff's medical treatment. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's Eighth Amendment claims against Defendants Washington, Russell, Morrison, Chrisman, Rohrig, and Macauley are premised on nothing more than respondeat superior liability, they fail to state a claim.

### 2.     Defendant Mikel

Plaintiff also alleges that Defendant Mikel violated his Eighth Amendment rights by failing to ensure that he received adequate medical care. Plaintiff indicates that Defendant Mikel was the Health Unit Manager at LCF. In his amended complaint, Plaintiff suggests that Defendant Mikel was responsible for assigning him to Defendant Oullette for medical care in 2019. (Am. Compl., ECF No. 6-1, PageID.128.) He also suggests that Defendant Mikel rejected his Step I grievance regarding his care in November of 2022. (*Id.*, PageID.129.)

As noted above, Plaintiff cannot seek to impose liability under Section 1983 against Defendant Mikel simply because he denied a grievance or failed to act based upon information set forth in Plaintiff's grievance. *See Shehee*, 199 F.3d at 300. Moreover, Plaintiff's amended

complaint is devoid of factual allegations from which the Court could infer that Defendant Mikel was personally involved in any medical treatment provided to Plaintiff. In light of the dearth of such factual allegations, Plaintiff has not sufficiently alleged that Defendant Mikel demonstrated deliberate indifference to his medical needs in any way. Accordingly, Plaintiff's Eighth Amendment claims against Defendant Mikel will be dismissed.

### 3.     Defendant West

Plaintiff's only mention of Defendant West in the body of his amended complaint is to allege that on January 9, 2023, Defendant West responded to one of Plaintiff's healthcare kites to indicate that his treatment was "pending scheduling." (Am. Compl., ECF No. 6-1, PageID.130.) The fact that Defendant West responded to Plaintiff's healthcare kite is insufficient to suggest that she was deliberately indifferent to Plaintiff's medical needs in any way. Plaintiff's amended complaint is devoid of any facts suggesting that Defendant West was personally involved in Plaintiff's medical treatment or that she deliberately delayed the scheduling of his treatment in any way. Accordingly, Plaintiff's Eighth Amendment claims against Defendant West will be dismissed.

### 4.     Defendants Oullette, Simon, Coleman, and Bomber

Throughout his complaint, Plaintiff alleges that Defendants Oullette and Simon, who served as his medical providers at LCF, refused to provide adequate care for his medical complaints. He also contends that Defendants Oullette, Simon, Coleman, and Bomber rejected several treatment plans suggested by the numerous outside specialists Plaintiff saw.

The Court recognizes that "a patient's disagreement with his physicians [or other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *See Darrah*, 865 F.3d at 372 (citations omitted). Furthermore, "a [medical providers]'s decision to reject another doctor's treatment recommendation in favor of his

[or her] own 'does not amount to deliberate indifference where both recommendations are made by qualified medical professionals' and the prison doctor's decision [wa]s made for a medical reason." *Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014); *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)).

Here, however, Plaintiff suggests that Defendants Oullette, Simon, Coleman, and Bomber rejected the various suggested treatment plans without replacing them with treatment plans of their own. Plaintiff alleges that he received only "ineffective" doses of Gabapentin and Tylenol, which did nothing to help his pain and condition. Plaintiff also sets forth facts suggesting that his condition has become worse over the years due to lack of adequate treatment. Under these circumstances, although Plaintiff has by no means proven his Eighth Amendment medical care claims against Defendants Oullette, Simon, Coleman, and Bomber, the Court will not dismiss Plaintiff's Eighth Amendment claims against them on initial review.

### E.    Official Capacity Claims

As discussed above, the Court has dismissed all Defendants and claims with the exception of Plaintiff's Eighth Amendment claims against Defendants Oullette, Simon, Coleman, and Bomber. Plaintiff indicates that he is bringing suit against those individuals in both their official and personal capacities.

Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are

immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

As noted above, Plaintiff seeks both compensatory and punitive damages, as well as injunctive relief. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants Oullette, Simon, Coleman, and Bomber in their official capacities, and those claims will be dismissed.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot

have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff's allegations suggest that, as of the date he filed his initial complaint, and even as of the date he filed his motion for leave to amend with his amended complaint, he had not yet received adequate medical care for his condition. The Court, therefore, will not dismiss Plaintiff's official capacity claims for injunctive relief against Defendants Oullette, Simon, Coleman, and Bomber on initial review.

<u>**Conclusion**</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. The Court will also grant Plaintiff's motion for leave to file an amended complaint (ECF No. 6) and will direct the Clerk to file the amended complaint (ECF No. 6-1) as a separate docket entry in this matter. Furthermore, Plaintiff's motion for a preliminary injunction (ECF No. 3) will be denied without prejudice.

Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint against Defendants Washington, Russell, Morrison, Chrisman, Rohrig, Mikel, Schultz, Villasan, Travis, Macauley, and West will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's official capacity claims for damages against remaining Defendants Oullette, Simon, Coleman and Bomber. Plaintiff's Eighth Amendment personal capacity claims,

as well as his official capacity claims for injunctive relief, against Defendants Oullette, Simon, Coleman and Bomber, remain in the case.

An order consistent with this opinion will be entered.


Dated:    March 3, 2025                       /s/ Sally J. Berens
                                          SALLY J. BERENS
                                          United States Magistrate Judge